IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JARED LOCKWOOD,

    **Plaintiff,**

    v.                                                                           CASE NO. 22-3027-SAC

MICHAEL SMITH, et al.,

    **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this *pro se* civil rights complaint under 28 U.S.C. § 1331.[1] Plaintiff is incarcerated at USP-Leavenworth in Leavenworth, Kansas ("USPL"). The Court granted Plaintiff leave to proceed *in forma pauperis*. This matter is before the Court for screening Plaintiff's Complaint and on Plaintiff's Emergency Request for Preliminary Injunction and Temporary Restraining Order (Doc. 3).

**I.  Nature of the Matter before the Court**

Plaintiff alleges in his Complaint that he arrived at USPL in July 2021 and signed up for the medication assisted treatment ("MAT") program. Dr. Wiseman placed Plaintiff on the list to receive Vivitrol and Plaintiff was waiting to begin the program. Plaintiff alleges that it has now been seven months and he has received no treatment and has been told that MAT is not a priority. (Doc. 1, at 6.)

Plaintiff alleges that several months ago, he relapsed and became physically dependent on opioids. *Id*. On December 13, 2021, Plaintiff began requesting medical care to treat his opioid

---

[1] *See Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1240 (10th Cir. 2005) ("The district court had subject matter jurisdiction in this case under 28 U.S.C. § 1331 or 1361. The cause of action arose directly under the Eighth Amendment, and relief against the prison dentists would take the form of a mandatory injunction or, more precisely, relief in the nature of mandamus.").

withdrawals. He was in severe pain, unable to retain food or water, and had a history of vomiting blood due to severe opioid withdrawals. (Doc. 1, at 4, 6.) On December 14, 2021, his withdrawals became so severe that he began vomiting blood. Numerous medical staff, including PA Petersen, Dr. Clark, and Dr. Aulepp, ignored his requests for treatment. On December 16, 2021, Plaintiff met with Dr. Wiseman for counseling and Dr. Wiseman emailed medical on Plaintiff's behalf and requested treatment for Plaintiff. *Id*. at 6.

On December 19, 2021, Plaintiff requested treatment using a buprenorphine type medication called Sublocade. Plaintiff alleges that Sublocade is "an abuse free, once a month injection, is offered at other federal institutions and would completely treat [his] opioid dependency and withdrawal symptoms." *Id*. On January 3, 2022, PA Petersen told Plaintiff that the only available option for MAT care is Vivitrol. *Id*. Plaintiff alleges that Vivitrol "is a preventative medication, does not treat opioid withdrawals or dependency, and requires almost two weeks of sobriety before it can be administered." *Id*. Plaintiff alleges that he is "currently stuck in a crippling cycle of using, withdrawaling [sic] and using again so as not to be in pain and [ ] unable to obtain the nearly two weeks required to receive Vivitrol." *Id*.

Plaintiff also alleges that he is being denied the same level of treatment that other inmates are receiving at USPL and at other Bureau of Prisons ("BOP") institutions. *Id*. at 4. Plaintiff alleges that another inmate at USPL received buprenorphine in 2019, citing *Crews v. Sawyer*, Case No. 19-2541-JTB. *Id*. at 7; Doc. 3, at 3. Plaintiff alleges that other similarly situated inmates within the BOP are being prescribed buprenorphine type mediations to treat their opioid dependence and withdrawals. (Doc. 1, at 7.)

Plaintiff names as defendants: Michael Smith, Assistant Director of Health Services, FBOP; D. Hudson, USPL Warden; and Dr. Kristine Aulepp, Chief Physician, USPL. Plaintiff

seeks declaratory relief and a preliminary and permanent injunction ordering Defendants to provide Plaintiff with Sublocade "or a suitable alternative so as to allow detoxification with minimal physiological discomfort." *Id*. at 10. Plaintiff has also filed a separate Emergency Request for Preliminary Injunction and Temporary Restraining Order (Doc. 3) seeking the same injunctive relief.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

A court liberally construes a *pro se* complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual

allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

**III. DISCUSSION**

The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual

4

punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)). A "factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842; *see also Mata v. Saiz*, 427 F.3d 745, 752 910th Cir. 2005) (such risks must present themselves as obvious to the so-called "reasonable man") (citation omitted); *see also Quintana v. Santa Fe Cty. Bd. of Comm's*, 973 F.3d 1022, 1029–30 (10th Cir. 2020) (finding that frequent vomiting alone does not present an obvious risk of severe and dangerous withdrawal, but *bloody* vomiting does).

Plaintiff has referred to *Crews v. Sawyer*, Case No. 19-2541-JWB, 2020 WL 1528502 (D. Kan. March 31, 2020), where the court determined that plaintiff's claims were moot because the parties reached an agreement to permit an inmate with OUD who had just entered BOP custody to use buprenorphine, consistent with a recent prescription, for as long as medically appropriate. This case is distinguishable because the parties have not reached an agreement, Plaintiff has not just entered USPL, and Plaintiff does not have a recent prescription for buprenorphine. *See Jones v. Armbrister*, Case No. 20-2520-SAC, 2020 WL 7042603, at *2 (D. Kan. Dec. 1, 2020) (distinguishing *Crews* where parties did not reach an agreement, plaintiff had not just entered jail, and there was no recent prescription for an opioid).

Plaintiff claims that his equal protection rights have been violated because other inmates have received buprenorphine. To allege an equal protection violation, a plaintiff must state facts indicating that defendants treated him differently than other similarly situated individuals. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Plaintiff does not allege that he was treated differently on the basis of class membership. To proceed upon an equal protection claim as a "class-of-one plaintiff," there must be allegations that others similarly situated in every material respect were intentionally treated differently and that the government's action was irrational and abusive. *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 631–32 (10th Cir. 2014); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of USPL. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate officials of USPL to prepare and file a *Martinez* Report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

**IV. Motion for Preliminary Injunction/TRO**

Plaintiff has filed an Emergency Request for Preliminary Injunction and Temporary Restraining Order (Doc. 3) seeking an order requiring Defendants to prescribe Sublocade or a suitable alternative.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they

are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted at this time; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal. The Court denies the motion without prejudice to the Court's reconsideration of the motion upon review of the *Martinez* Report. The Court will reconsider Plaintiff's request for injunctive relief after reviewing the Report.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Emergency Request for Preliminary Injunction and Temporary Restraining Order (Doc. 3) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that**:**

(1) Officials responsible for the operation of USPL are directed to undertake a review of the subject matter of the Complaint:

   a. To ascertain the facts and circumstances;

   b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

   c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to the Complaint and should be considered together.

(2) Upon completion of the review, a written report shall be compiled which shall be filed with the Court by **March 25, 2022,** and served on Plaintiff. The USPL officials must seek leave of the Court in order to file certain exhibits or portions of the report under seal or without service on Plaintiff. Statements of all witnesses

shall be in affidavit form.  Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report.  Any recordings related to Plaintiff's claims shall also be included.

(3)     Authorization is granted to the officials of USPL to interview all witnesses having knowledge of the facts, including Plaintiff.

(4)     No answer or motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(5)     Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed Defendants' answer or response to the Complaint and the report ordered herein.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the USPL Warden as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein.  Upon the filing of that report, the Warden may move for termination from this action as an interested party.

Copies of this order shall be transmitted to Plaintiff, to the USPL Warden, and to the United States Attorney for the District of Kansas.

**IT IS SO ORDERED**.

**Dated February 15, 2022, in Topeka, Kansas.**

<u>S/ Sam A. Crow</u>
SAM A. CROW
SENIOR U. S. DISTRICT JUDGE